IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

KAREN BARBER,                                )
                                             )
        Plaintiff,                           )
                                             )
v.                                           )        Civil Action No. _7:20-cv-555_
                                             )
SOUTHWEST VIRGINIA                           )
INVESTMENTS INC.                             )
                                             )
and                                          )
                                             )
CHARLES JOHN "CJ" COVATI,                    )
                                             )
        Defendants.                          )

## COMPLAINT

Plaintiff Karen Barber, by counsel, moves for judgment against defendants Southwest Virginia Investments Inc. and Charles John "CJ" Covati, jointly and severally, and as grounds therefore states as follows:

### STATEMENT OF THE CASE, JURISDICTION AND VENUE

1.     This is an action for declaratory, injunctive relief and monetary damages, and to address deprivation of rights secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. (hereinafter, "Title VII").

2.     The Court has jurisdiction over this action pursuant to 42 U.S.C. §2000e-5(f).

3.     The claims asserted in this action arose within the Western District of Virginia and the alleged discrimination, retaliation, and damage occurred in the

Western District of Virginia. Venue of this action is thus proper pursuant to 42 U.S.C. §2000e, et seq.

4.     Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission and the Virginia Council on Human Rights; received a notice of right to sue dated July 21, 2020; and commenced this action within 90 days of receipt thereof

5.     Defendant Southwest Virginia Investments Inc. is a Virginia corporation with its principal place of business in Roanoke Virginia.

6.     At all times material hereto, Southwest Virginia Investments Inc. was a "person" within the meaning of Title VII, Section 701, 42 U.S.C. §2000e(a).

7.     At all times material hereto, Southwest Virginia Investments Inc. was an "employer" within the meaning of Title VII, Section 701, 42 U.S.C. §2000e(b), that is, at all times material hereto Southwest Virginia Investments Inc. was a person engaged in an industry affecting commerce which had 15 or more employees for each working day in each of twenty or more calendar weeks during the years of plaintiff's employment or the preceding  calendar year.

8.     At all times material hereto, defendant Charles John Covati is and was a resident of Roanoke County, Virginia.

9.     At all times material hereto, Charles John Covati acted within the actual or apparent scope of his authority as employee and/or owner of Southwest Virginia Investments Inc. or in his individual capacity, or both.

10.    At all relevant times, John Carter managed the finances of the Gold and Silver Club, and was an owner and/or high level manager.

11.    At all times material hereto, Carter and Covati acted in their capacity as owners, supervisors, and/or high level managers of Defendant Southwest Virginia Investments Inc., and held themselves out as the same.

12.    Plaintiff at all times material hereto is and was a resident of the Commonwealth of Virginia and was an "employee" of defendant Southwest Virginia Investments Inc. doing business as the Gold and Silver Club.

<u>STATEMENT OF THE CASE</u>

13.    Karen Barber is a professional exotic dancer with roughly 30 years of experience in the industry.  The occupation entails performing what is commonly referred to as a "striptease" in front of an audience typically at a nightclub or bar. Audience participation in the form of touching such dancers is strictly prohibited in the industry.

14.    Karen Barber was hired by the Club on February 18, 2019 as a dancer and had previously worked at the Gold and Silver Club, then under different ownership.  Before being hired on February 18th of 2019, she met with and was approved for hire by the Club's three "managers," including Charles John "CJ" Covati ("Covati").

15.    On the evening of February 18, Barber reported for her first night of work and, after arrival, changed into her costume.  As she was waiting at the bar for

customers to arrive, Covati approached Barber directing her to come with him to a private room upstairs at the Club where he intended to show her how customers might act during "private dances" offered by the Club.  Barber reminded Covati of her years of experience, assuring him she knew how to provide such dances, but Covati responded "show me," in no uncertain terms.  Barber followed Covati upstairs, concluding that he was her supervisor for the evening and that she had no choice but to demonstrate a dance as directed.

16.    What occurred in the private room at the Club as Barber danced for Covati quickly turned from a dance into a horrible and painful sexual assault and battery of Barber by Covati.  Once she began dancing, Covati suddenly grabbed her breast nipples, twisting them very forcefully as Barber winced in pain, with Covati watching and ordering her to continue dancing.  As Barber tried to remain calm, Covati then directed Barber to turn her back to him and bend over to which Barber voiced objection.  Covati called in another dancer to demonstrate and, upon the employee's departure, again directed Barber to turn around as she was dancing and bend over Covati who was seated on the sofa in the room.  When she obeyed his direction, Covati reached out and chocked her, he then grabbing her buttocks and forcefully attempting to push his finger into her rectum.  The "dance" was then concluded. In that moment Barber felt powerless, afraid and intentionally violated.

17.    In pain and shock from Covati's sexual assault, Barber left the private room that night, reeling internally from the sexual assault that had just occurred and

vowing to herself that she would inform the owner and thereafter the police. She left the Club that evening aghast that she had been sexually violated by her boss under the guise of teaching her what to expect at the Club. Prior to February 18, 2019, Barber had not been physically violated in all of her years as a dancer.

18.     John Carter on February 18, 2019 was the owner and/or presented himself as the owner to the public and employees of the Gold and Silver Club. He was acting as the general manager and had decision making authority over hiring and firing of employees.

19.     On Friday March 1, 2019, Karen Barber met with John Carter at the Buffalo Wild Wings in order to discuss the assault by Covati. Barber informed Carter at that time of the events of February 18, 2019 and asked what could be done to address the behavior. During the conversation, Carter did not express surprise at the events described by Barber or tell her what he intended to do.

20.     The following day, on March 2, 2019, at the direction of Carter, Covati fired Karen Barber in retaliation for her complaints and in violation of Title VII of the Civil Rights Act of 1964. The fact that Covati himself, her abuser, was the one who fired Barber added to the humiliation and trauma she continued to experience.

21.     Carter reported to other employees that he fired Plaintiff because he did not want to deal with her drama or words to that effect.

22.     Carter allowed Covati to continue to work at the club after Karen Barber was fired.

23.    According the police investigation, other dancers complained of similar conduct by Covati.

24.    All of the events which took place in the private room of the Club on February 18, 2019 were captured on a video recording, as the Club maintained cameras in all such rooms for the very purpose of reducing the risk that dancers would encounter criminal sexual assault by a customer while engaged in a private dance.

25.    Under information and belief, after Carter met with Barber and learned of her allegations against Covati, he watched the video recording of the events.  Upon information and belief, Covati also watched the video.  Despite an ongoing criminal investigation by the Roanoke City Police and despite knowing that Barber was likely going to pursue legal action herself, Covati and Carter deleted the video or allowed the camera system to record over the events of February 18, 2019.

26.    Prior to March 2, 2019, Defendant employer had failed to have Plaintiff fill out any required employment paperwork and verify her eligibility to work as required by federal law.

27.    On March 2, 2019, Karen Barber had already worked at the Gold and Silver Club as an employee for several nights and was owed the minimum wage.

28.    Karen Barber has never received payment for any wages from the Gold and Silver Club.

29.     On March 2, 2019, just prior to him firing her, Karen Barber was forced, under duress by the person who assaulted her, to sign a purported arbitration agreement pertaining to Defendant Covati.

30.     It was the understanding of Karen Barber that she would not receive the wages she was already entitled to by federal law if she refused to sign the "employment paperwork" presented to her.

31.     Any such purported arbitration agreement is void because it was signed under duress, is unconscionable and lacks consideration.

### COUNT I: CLAIM FOR SEX DISCRIMINATION AND HARASSMENT
### (AGAINST SOUTHWEST VIRGINIA INVESTMENTS INC.)

32.     Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

33.     Defendant Southwest Virginia Investments Inc. had a duty to maintain a work environment free of sex discrimination and harassment.

34.     Defendant Southwest Virginia Investments Inc.'s action and inaction created a hostile an offensive work environment and interfered with plaintiff's work.

35.     Defendant Southwest Virginia Investments Inc. knew or should have known of the hostile work environment and failed to take prompt remedial action reasonably calculated to end the harassment.

36.     Defendant Southwest Virginia Investments treated the male subject of the assault complaint in an objectively better manner than the female complainant in

that it allowed the male subject of the complaint to continue to work at the club but fired the female complainant.

37.     Defendant Southwest Virginia Investments Inc. further violated federal law by failing to take action reasonably calculated to prevent sex discrimination and harassment and by permitting a work environment to exist that was hostile and offensive to plaintiff and other female employees.

38.     As a direct and proximate result of defendant Southwest Virginia Investments Inc.'s actions, plaintiff has suffered and will continue to suffer loss of employment, pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

39.     At all times material hereto, defendant Southwest Virginia Investments Inc. engaged in a discriminatory practice or  practices with malice or reckless indifference to the federally protected rights of plaintiff so as to support an award of compensatory  and punitive damages.

40.     The above-described acts of defendant Southwest Virginia Investments Inc. constitute sex harassment and discrimination  in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e, et. seq.

### COUNT II: TITLE VII CLAIM FOR RETALIATION
### (AGAINST SOUTHWEST VIRGINIA INVESTMENTS INC.)

41.     Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

42.     Defendant Southwest Virginia Investments Inc. discriminated against plaintiff in violation of federal law in that defendant Southwest Virginia Investments Inc. harassed and retaliated against plaintiff and terminated her employment for complaining about the harassment and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, as amended.

43.     As a result, of defendant Southwest Virginia Investments Inc.'s discriminatory acts, plaintiff has suffered and will continue to suffer pecuniary loss, mental anguish, pain and suffering, shame, humiliation, embarrassment, loss of enjoyment of life and other non-pecuniary loss.

44.     Defendant Southwest Virginia Investments Inc. acted willfully toward plaintiff with actual malice or with reckless disregard of the protected rights of plaintiff so as to support an award of liquidated and exemplary damages.

## COUNT III: CLAIM FOR ASSAULT AND BATTERY (AGAINST SOUTHWEST VIRGINIA INVESTMENTS INC. AND CHARLES JOHN COVATI)

45.     Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

46.     During the incident described above, plaintiff was placed in apprehension of imminent harmful or offensive contact with Covati's person, which created a reasonable apprehension of a battery.

47.     During each occasion enumerated above, plaintiff was subject to an unwanted touching, which was not consented to, excused, or justified.

48.     The acts of defendant Charles John Covati constitute assault and battery under the common law of the Commonwealth of Virginia, for which Charles John Covati is liable.

49.     The acts of defendant Southwest Virginia Investments Inc., through its agent and employee, constitutes assault and battery in violation of Virginia common law for which defendant Southwest Virginia Investments Inc. is directly or vicariously liable under the doctrine of respondeat superior and otherwise under Virginia common law.

50.     As a result of defendants' acts, plaintiff has suffered and will continue to suffer pecuniary loss, mental anguish, pain and suffering, shame, humiliation, embarrassment, loss of enjoyment of life and other non-pecuniary loss.

51.     Defendants acted willfully toward plaintiff with actual malice or with reckless disregard of the protected rights of plaintiff so as to support an award of liquidated and exemplary damages.

WHEREFORE, plaintiff Karen Barber demands judgment against defendant Southwest Virginia Investments Inc., and Charles John "CJ" Covati, and each of them, jointly and severally, for injunctive and equitable relief, compensatory and punitive damages, together with pre-judgment interest and for costs and attorney's fees to the extent recoverable by law, and for such other and further relief as may be just and equitable.

10

Trial by jury is demanded on all issues on which plaintiff is entitled to trial by jury, including any question concerning whether plaintiff's claims must be submitted to arbitration.

Respectfully Submitted

KAREN BARBER


By: s/Johneal White

Johneal M. White (VSB No. 74251)
GLENN ROBINSON CATHEY MEMMER & SKAFF PLC
400 Salem Avenue, S.W., Suite 100
Roanoke, Virginia  24016
jwhite@glennrob.com
(540) 767-2200 – Phone
(540) 767-2220 – Fax
    Counsel for Plaintiff